313-0863, consolidated with 313-0864, people of the state of Illinois, Appalachia, Don Duffy v. Tricia Thompson, Thomas and Mario Clattis. Thank you. Mr. Clattis, good afternoon. Good afternoon, your honors, counsel. May it please the court, I'm Mario Clattis, assistant appellate defender with the Office of the State Appellate Defender, and I represent the defendant of felon Tricia Thompson. Ms. Thompson pled guilty to two counts of residential burglary, and she was sentenced to an aggregate 18 years in prison. She received eight years for the first offense, ten years for the second, and they were mandatorily consecutive because she was out on the bond in the first when she committed the second. On appeal, she argues one thing, that her sentence was manifestly disproportionate to the nature of her crimes. To the what? To the nature of her crimes. Okay, I'm sorry, I'm having a hard time really hearing that. I'm sorry, I mumble sometimes, and I apologize. Your honors, when the defendant argues that her sentence is excessive, the standard of review is very deferential to the trial court, but it's not absolute. And this case is one of those rare times when the reviewing court has to step in. Thompson is a troubled person. Her parents exposed her to drugs when she was still a teenager. Her mother, in particular, would procure marijuana, LSD, and psychedelic mushrooms for Thompson and would get high with Thompson. Her grandfather is a sex offender with a record who molested her for several years when she was a child. Now she's an adult, and perhaps unsurprisingly, she's a drug addict with a significant criminal record, though no real violent crimes. In this case, however, Thompson entered the empty apartments of an ex-boyfriend and her mother's friend when no one was home. She took a Sony PlayStation, two controllers, a video game, two rings, and a jar of portals. Most, if not all, of this was returned to the owners. The circuit court found in this case that her conduct neither caused nor threatened serious harm. And still, though, the court sentenced her to 18 years in prison. Given the nature of Thompson's conduct, and specifically given that the circuit court found that what she did didn't cause or threaten serious harm, that punishment was manifestly disproportionate to the nature of her crimes. And the court's sentence was, therefore, an abuse of discretion. On appeal, the state acknowledges that the circuit court found that no serious harm was caused or threatened. Still, the state argues that the 18 years was proper. How are you defining harm? I mean, how is it defined? Because we're dealing with residential burglary, not dealing with assault or battery. I believe the way the trial court viewed it was no threat of physical harm, no serious harm. But it seems to me residential burglary has harm of a psychological nature. Intrusive, invasion of privacy, disclosure of secrets, arguably, when your home is invaded by an unwanted person. I agree, and I don't dispute any of that, Your Honor. Again, though, the court, when it weighed everything, when it considered all the facts in the case, found that there was no serious harm caused or threatened. Well, that was the reason I asked, is what type of harm were they looking at? I think the harm the court specifically mentioned was physical harm, but I don't think there's any reason to think the court didn't understand the nature of what happened here and that she'd entered people's homes, and the court was well aware of that. And so I'm sure the court did consider all those things, too. You know, so the state doesn't dispute that, again, no serious harm was caused or threatened. Physical. No physical. Because I have a real problem with modern criminology, only thinking harm is physical harm. The trial court definitely did not find that any other harm was caused or threatened, though. But I think precision would require physical as a modifier. In its brief, the state points, you know, omitting the details of what Thompson actually did, the state focuses on the statutory classification of the offenses. But to resolve an excessive sentence claim, looking at the statutory classifications isn't the only thing we do. In a given case, the severity of an appropriate sentence depends primarily on the degree of harm caused, however harm is defined. And here, 18 years is just manifestly disproportionate to that harm. The state also argues on appeal that this court can't reduce or remand, reduce their sentence or remand their case for resentencing without reweighing the factors that the circuit court considered. But the Supreme Court, the Illinois Supreme Court, has done exactly what Thompson is asking for here. It has reduced other defendant's sentences. And when the court has done so, it has done so without reweighing any of the factors. And in fact, it is explained, for example, in People v. Stacey, that it was not reweighing anything. It was simply looking at what the defendant did on the one hand and the sentence he received on the other. And that's all the appellate court has to do here, is to look at what Thompson did on the one hand and the sentence she received on the other. And in this case, where she goes into the empty apartments of people she knows, she steals a PlayStation, a couple controllers, a video game, a couple rings, and a jar of quarters, 18 years is just too much. Well, isn't sentencing an abuse of discretion review standard? I'm sorry, say that again, Your Honor. Sentencing an abuse of review, or I mean abuse of discretion review standard? Yes. So aren't we finding the trial court abused its discretion? Yes, that is what we are. That no rational person would do as they did? That is what we are arguing. We are arguing that if you look at what Thompson did, and if you look at what the court gave her, 18 years in prison. The trial judge was irrational. I believe the judge, yes, Your Honor. Why don't we just say it? I'll say it. Explain it. The judge's decision was arbitrary. To hand out 18 years for something like this? I mean, her most recent prison sentence, and again, we don't dispute the significant record she has here. She had previously been sentenced at most to four years in prison. Even if the judge had arbitrarily decided to double, even if the judge said, I don't know whatever you had the last time, I'm going to give you double that. She still would have gotten less time in this case. You know, she could have gotten, the minimum she could have gotten was eight years in prison because of the consecutive nature, because she had to serve him consecutively. She got 18. I mean, this is, it's arbitrary, it's unreasonable. The judge abused his discretion. Does that affect this at all? I'm sorry, Your Honor? What about her prior record? I don't think that. How does that affect what the judge did? The judge considered her prior record, certainly. And he considered her prior record, he considered, you know, deterring other people from committing similar offenses. But again, this court can reduce her sentence. This court can remand for resentencing just on the basis of what she did and what the court sentenced her to. There's clear Supreme Court precedent for this. Well, yeah, I mean, we have the authority, arguably, to do that. But there has to be some still calculus in doing that. Some calculus, I mean, what you're just saying, I mean, and Justice Litton's question was, what about her prior record? Does that weigh in? The court considered it. This court doesn't have to ignore it. But this court can still look at what she did and look at that sentence and decide that it's too much. I understand that there's, you know, the term we throw around for this is reweighing. And in some way, there's going to necessarily be some reweighing, but the Illinois Supreme Court has explained when we say, I mean, it's clear, reweighing doesn't mean this. You know, reweighing in terms of. Well, they can say anything. They can say anything. I mean, it's not, you know, they can say, some came up from the West, who? And, you know, arguably, if it's an opinion, we must follow that. Sure. I mean, the court, when it did that in people v. Stacy, for example, it wasn't. They were reweighing. They say what they did is not reweighing. Sure, yeah. Okay? I mean, that's. I get what you're saying, and I have thought about this. But what the court says it's doing in that case is not reweighing. It's looking at, this is, I mean, it's looking at what she did. Again, this is the primary driver. By looking at what she did in this charged instrument, or in this charge. Yes. Okay. But sentencing looks at other things besides what the act was, the criminal act. Yes. What role do those other things, back to Justice Whitman's question, what role do those other things, prior criminal history, how does the court of review consider that? We have on the record that the trial court considered it. And arguably, is that, did that accelerate it up to 18 years? Again, I mean, even given her record, she's got no real violent crimes. She has, I think, a battery conviction from 2008 in Florida. It's not really clear what happened. It sounds like some fight with her mother that got out of hand. Well, that is violence. It is violence. Again, we don't really know from the record what happened, though. What was her criminal record? She has a battery. Most of it is drug crimes, theft to get money to buy drugs. I think there's a lewd conduct offense in there somewhere in Florida. Nothing that indicates we're talking about some hardened violent criminal. Nothing that shows she's a real threat to people in that way. And, again, in this case, the facts of this case, what she did here, is the thing that is supposed to be the primary driver of the sentence she receives for these offenses. In reality, is this a 50% sentence? This is a 50% sentence, yes. So, in reality, we're talking nine years or less. We're talking nine years or less, but that was also true in cases like Stacy and the get, where it's 50% sentences and it doesn't really change. It's still a significant prison term. But you were just arguing for eight years. I don't think I was just arguing for eight years. You said if you double the four years she had prior, I get eight by my math. And you said the minimum was eight years. Yes. We haven't asked for the minimum sentence in this case. We acknowledged in our brief that more than the minimum would have been appropriate. We haven't asked for that. The minimum would be split in half, too. The minimum, she would still get four and four. She would serve four years. So, yeah. My math is not very great, but that was easy. Okay. I mean, I understand the court, the appellate courts are really reluctant to do anything that looks like reweighing. I don't think reweighing is necessary here. The Supreme Court has clarified that it's not reweighing when you're just looking at an excessive sentence claim and reducing a remanding on the basis of what the defendant says. So the court says we're not reweighing, we're just finding disproportionality. That is what the court is doing. This court can look at the Supreme Court's reasoning in that case and apply the same reasoning here, and that's what we're asking for. Thank you. I have nothing more if the court has any questions. Okay. Thank you. Ms. Duffy. Good afternoon again, Your Honors. Mr. Kladdis. This case involved a guilty plea to two residential burglaries, and in the course of the guilty plea, the State agreed to dismiss one count of theft and a separate case number. There was a third pending case that is not consolidated into these two because it was dismissed. The sentence was left open. This defendant, because of her criminal history, was eligible for an extended term sentence in each case. She didn't get extended term sentencing. The maximum she could have gotten would have been 30 plus 30 for 60 years. The minimum extended term was 15 plus 15, but she didn't get that either. These sentences were mandatorily consecutive. She got eight years in one case and 10 in the other. The statutory range is not less than four or more than 15. She did not even get the maximum term for either residential burglary. That, even given she has a considerable criminal history with convictions in Illinois and Indiana, they did a risk assessment for reoffending on her and found that she was at the maximum. She was on parole at the time of the incident offenses, and after she was arrested in the 2013-05 case, she was arrested four more times. She just doesn't stop. Now, it may be because of her drug abuse. She invades people's homes and steals their property and pawns it, or she commits retail theft. She does all kinds of things to get drugs. The trial judge considered her drug abuse, her history, her prior convictions for drug offenses. He ordered that she receive drug treatment in prison. But drug use and even drug addiction itself is not a statutory mitigating factor. In fact, it can be an aggravating factor. And in this case, it probably is because that's what propels her to be the consistent thief that she is. Now, I understand she had a bad background. That is laid out extensively in the pre-sentence report read by the trial judge and discussed at her sentencing hearing. Every mitigating factor that could possibly apply to her was considered by the trial judge in determining her sentences. And there is absolutely no indication here that he abused his discretion in imposing an 8- and a 10-year term. And as I said, those were mandatorily consecutive. Whatever sentences she's got, she's going to have to serve them that way. In terms of the facts here, she's charged with two incidents of residential burglary, one ex-boyfriend and one friend of the mother, correct? Right. What are the disparities in the sentences? Was the first, the 8-year sentence, was that the boyfriend's? I don't recall, Justice Holder. I mean, they seem like they're both residential burglaries. Why wouldn't they get the same sentence? I don't know. I think perhaps it was the boyfriend in the lesser sentence of mine, right? Yes. Do you know? Yes. The boyfriend in the lesser sentence and the friend of her mother, someone she really wasn't that close to. But it also could be the value of the property that was taken. And I don't recall what that value was. I know she pawned the property that she stole. But is that appropriate? I mean, residential burglary is a residential burglary. That's nothing to do with the items. Hey, I'm all for that. Does it have anything to do with the residence that was invaded? I'm all for 10 and 10. That would be fine. Well, I'm just, are we saying the boyfriend's are less offensive? I don't know. Maybe. I don't know. It could be because she had at some point, this is an ex-boyfriend. It could be that at some point she had a key to his apartment but no longer had any authority to enter it and did enter without his permission to steal the property. I can understand why that might be a little bit different. Let's see, any other questions? Thank you, Your Honor. Mr. Kladdis? Just really briefly, Your Honors. Again, I understand what I'm asking the court to do. What I keep coming back to in this case is what she did. I know she entered people's homes. I know that's bad. I don't want my home entered. No one in this room does. It would bother me. But she knew these people. No one was home when she went in. The things she stole, most of it was returned. The trial court found no serious harm caused or threatened. And I think given that, to just give her 18 years in this case, it's just too much. Yes, it's unreasonable. That's all I have.  We thank both of you for your arguments this afternoon. We take the matter under advisement and will issue a written decision as quickly as possible. The court will stand in recess for a panel of change.